## Case No. 2,534.

### Ex parte CAYLUS et al.

### In re HOLBROOK.

[1 Lowell, 550.] [1]

District Court, D. Massachusetts. March, 1871.

BANKRUPTCY—MUTUAL CREDITS—EVIDENCE OF FORMER DEALINGS TO VARY CONTRACT.

1. It seems, that the rule laid down in Rose v. Hart, 8 Taunt. 499, that a deposit of goods by a contract which will result in a debt, brings the case within the mutual credit clause of the bankrupt act, so that the bailee can set off his debt against the value of the goods, is the true rule under our bankrupt law.

2. Where a bailee of goods had been the original vendor of them, and supposed that he had a lien and an immediate right of sale, and agreed with the bailor to hold the goods for six months longer, and not to sell within that time, except for a certain price, but that afterwards he might sell and reimburse himself, *held*, this was a valid contract whether there were an antecedent lien or not, and after bankruptcy the bailee could have the goods sold and apply the proceeds towards the payment of his debt and prove for the deficiency.

3. A former course of dealing between A. and a broker, cannot be given in evidence to vary or explain a contract between A. and B., made through the same broker, if unknown to B. and not founded on a general usage of trade.

Bankruptcy. The bankrupt [C. L. Holbrook] was a clerk who had sometimes speculated in merchandise through the agency of his friends R. H. Green and Sons, merchandise brokers, of New York. On the 29th July, 1868, Messrs. Green bought for his account from Caylus, De Ruyter, & Company, importers, of New York, one hundred casks of French madder of a particular brand, to be thereafter shipped from France in the December and January following, to be delivered on the dock in New York in good order,

and of prime quality, for fifteen cents per pound in gold, payable in thirty days after delivery. The bought and sold note disclosed Holbrook as the principal. The madder arrived early in 1869, and was delivered to the brokers, but was not paid for in thirty days, and had not been paid for at the date of the bankruptcy, June 28, 1870. It was then in the hands of the petitioners, Caylus, De Ruyter, & Co., the original vendors, having been consigned to them for sale in December, 1869, as presently to be stated; and since the appointment of the assignee the madder has been sold by order of court on consent of the parties, who now submitted the question whether the proceeds of sale which are less than the original price, belong to the assignee, or may be applied by the petitioners towards the payment of their debt, with leave to them to prove for the deficiency. The correspondence of the parties, and the oral evidence in the case tended to show that the goods had been delivered to Green & Co. on their arrival in New York. The petitioners offered to prove that by the course of dealing between them and the brokers, the latter were to hold the goods as agents for both parties, and to apply the proceeds of sale to the payment of their account.

LOWELL, District Judge. I cannot admit a course of dealing between other parties, even if they were represented by the same brokers, to qualify the delivery which the contract calls for, unless it amounts to a general usage of trade, or is in some way brought home to Mr. Holbrook.

After the madder had been delivered, it was pledged by the brokers to a trust company, and the money thus raised was advanced to the petitioners, but not in payment of their account for the madder; and they afterwards advanced the money to Green to repay the trust company, and took the pledged goods into their own possession. Soon after this, they wrote to Holbrook, December 2, 1869, reminding him that the bills for the madder had been rendered more than eight months before, and offering if he would pay the interest and expenses and consign the goods to them for sale at a commission of two and a half per cent, to "carry" the goods for his account and risk for ninety days. They wrote that in this way they could get advances on them, &c., and closed thus: "We think this arrangement the best for all concerned, as putting this long pending matter in the way of settlement, and carrying the goods over to a time when sales may reasonably be expected to be made, and avoiding the necessity which would otherwise occur of realizing on the goods at an unfavorable moment." Upon receipt of this letter, which came through Messrs. Green & Co., as usual, Mr. Holbrook referred the matter to them, and an agreement was arrived

[1] [Reported by Hon. John Lowell, LL.D., District Judge, and here reprinted by permission.]

at as appears by a letter of 31 December, 1869, from Holbrook to the petitioners, and their answer, January 3. 1870, by which the petitioners in consideration of the payment of the interest, storage, expenses, and insurance, to 31 December, and of the goods being consigned to them for sale, agreed not to sell for six months without Holbrook's consent, unless they could obtain sixteen cents a pound in gold. The letter of the petitioners accepting the terms, says that after six months they are to sell at the best price they can obtain for Holbrook's account. To this letter there was no reply. As the six months were about to expire, some negotiations were had looking to a further extension, but nothing was arranged, and a few days before the time was out Holbrook filed his petition in bankruptcy.

G. O. Shattuck & W. A. Munroe, for petitioners.

The petitioners never lost their lien as vendors; or if they did, it revived when they again obtained possession of the goods. Bing. Sales, 580; Stephens v. Wilkinson, 2 Barn. & Adol. 320; Gillard v. Brittan, 8 Mees. & W. 575. The goods having been consigned to the petitioners for sale, they have a right of set-off under the mutual credit clause of the bankrupt act, even if they had no lien. Rose v. Hart, 8 Taunt. 499; Naoroji v. Bank of India, L. R. 3 C. P. 444; Murray v. Riggs, 15 Johns. 591; Demmon v. Boylston Bank, 5 Cush. 194.

H. D. Hyde, for assignees.

A factor has a lien only for his advances or for general balance of account as factor, and not for what may be due him in some other capacity. Houghton v. Matthews, 3 Bos. & P. 485; 2 Kent, Comm. 645; Smith, Merc. Law. 516. If Holbrook had chosen to revoke the agency, the petitioners could not have objected, and as the bankruptcy occurred before sale had been made of the goods, the assignee may revoke, and take them for the general creditors.

LOWELL, District Judge. Our bankrupt law has adopted the language which had been used in former statutes for a long time, in reference to cross-demands between the assignee of a bankrupt and a creditor of the estate, that "in all cases of mutual debts or mutual credits between the parties, the account between them shall be stated, and one debt set off against the other, and the balance only shall be allowed or paid." After some diversity of opinion, the leading case of Rose v. Hart. 8 Taunt. 499, appears to have been accepted as settling the law of England, that where a creditor has goods or choses in action of the bankrupt put into his hands before bankruptcy by a valid contract, by the terms of which the deposit will result in a debt, as if they are deposited for sale or collection, the case of mutual credit has arisen within the meaning of the bankrupt act; but where there is a deposit for some other purpose, as in the leading case itself, where goods were left with a fuller to be dressed, he can claim nothing beyond such lien as the common law gives him. See Rose v. Hart, 2 Smith, Lead. Cas. 172, and the American notes which cite cases in this country quite as liberal in favor of an equitable set-off, even when the statute is silent.

Under this rule the petitioners would have a right to set off the price of these goods against the demand of the assignee for the value of the goods, by virtue of the consignment of December, 1869, independently of any question of the revival of their lien as vendors, or of the intermediate pledge by the brokers. But this inquiry I do not pursue beyond the mere statement of a rule which seems to be indisputable, because the facts establish a right to hold the goods by the very terms of the contract. Whether the petitioners had a lien or not. it is plain that both parties thought they had one, and that the last agreement between them was made on that basis. the petitioners undertaking for a valuable consideration, to "carry" the madder for six months, and at the end of that time to be at liberty to sell it for the best price they could obtain, and reimburse themselves. This was accepted as a concession on their part, and to save a sacrifice; and throughout the correspondence, the talk is of "margins," and of "carrying" the goods for the benefit of Mr. Holbrook, all of which imports a right in the merchants to insist on a sale, and a holding of the goods as security for the purchase-money. I find, therefore, that the evidence clearly shows a lien by contract, whatever may have been its supposed origin, and a lien on which the parties have so acted and dealt with each other that the bankrupt and his assignee cannot now deny it. It was founded on the valuable consideration of a forbearance to sue.

Order that the petitioners have leave to apply the proceeds of sale of the madder towards the payment of their debt, and to prove for the deficiency.